**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DAN MERCADO,                          :
                                      :
                Plaintiff,            :     Civil Action No. 10-3118 (SRC)
                                      :
                                      :
            v.                        :     **OPINION**
                                      :
KENNETH SHARPE, et al.,               :
                                      :
                Defendants.           :

**APPEARANCES:**

> DAN MERCADO, Plaintiff pro se
> #087, SBI 753866A
> East Jersey State Prison, Special Treatment Unit
> CN 905, 8 Production Way
> Avenel, New Jersey 07001

**CHESLER**, District Judge

Plaintiff, Dan Mercado, an involuntarily committed person pursuant to the Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:4-27.24, et seq., brought this action in forma pauperis, asserting claims of constitutional violations with respect to his placement on prison grounds as a civilly committed person. This Court granted plaintiff's application to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998), and the Complaint was filed accordingly. However, at the time IFP was granted, the Court did not review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2), to determine whether the action should be dismissed as frivolous or malicious, for failure to state a claim

upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  This statute allows the Court to dismiss a case "at any time if the court determines that" the Complaint is frivolous or malicious, if it fails to state a cognizable claim, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).  For the reasons set forth below, the Court concludes that this action should be dismissed for failure to state a claim at this time.

The Court also finds that the motions to dismiss the Complaint and/or for summary judgment (Docket entry nos. 12 and 16), filed on behalf of defendants, Steve Johnson and Merril Main, will be denied as moot.

I. <u>BACKGROUND</u>

Plaintiff, Dan Mercado ("Mercado"), brings this civil rights action, pursuant to 42 U.S.C. § 1983, against the following defendants: Kenneth Sharpe, Deputy Attorney General for the State of New Jersey; Ms. Debbie Hasting, Superintendent of the East Jersey State Prison-Special Treatment Unit ("EJSP-STU"); Dr. Merril Main, Administrator of the New Jersey Department of Human Services ("NJDHS"); and Steve Johnson, Assistant Superintendent at the EJSP-STU.  (Complaint, Caption and ¶¶ 4b-4e).  The following factual allegations are taken from the Complaint, and

2

are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

In his Complaint, Mercado alleges that defendants have either authorized or condoned the New Jersey Department of Corrections ("NJDOC") to place plaintiff, a civilly committed resident, on prison grounds, and under prison policy and guidelines in violation of his constitutional rights.  (Compl., ¶¶ 4b-4e).  Specifically, Mercado alleges that defendant Sharpe "overlooked" the "law" in placing civilly committed residents on prison grounds.  (Compl., ¶ 4b).  He also alleges that defendant Hasting has authorized correctional officers to conduct prison searches and to segregate residents by having them attend group therapy "in other rooms."  (Compl., ¶ 4c).

Mercado further complains that defendant, Merril Main, allowed the residents to be segregated from attending their group therapy sessions where the residents had made progress.  Main also allegedly fabricated a test called the "Hair Scope Psychotherapy Test" without the involvement of any therapists. (Compl., ¶ 4d).  As to defendant Johnson, Mercado alleges that Johnson authorized correctional officers at EJSP-STU to search residents as well as their public advocate attorneys or public defender attorneys, pursuant to prison policy.  (Compl., ¶ 4e).

In particular, Mercado states that he is constantly being searched after every "movement."  On May 18, 2010 and June 10,

3

2010, Mercado told defendants Main and Johnson that his constitutional rights were being violated by housing plaintiff and other civilly-committed residents on prison property. Mercado further complains that the showers are cold in the EJSP-STU, and that when it rains, water puddles on the floor from leaks in the ceiling. He also alleges that there is no air conditioning system in the EJSP-STU. When Mercado brought these issues to the attention of the administrators, he was told that they are "working on it." (Compl., ¶ 6).

On May 27, 2010, Mercado was pat searched and "ion" searched when he went to different locations in EJSP. When Mercado complained to the correctional officer who worked the "ion scan" machine that plaintiff is not a prisoner, the officer replied that plaintiff is in a prison facility. On June 10, 2010, Mercado states that he witnessed a correctional officer perform a pat search of a public advocate attorney and a court clerk who had visited the EJSP-STU. (Compl., ¶ 6).

Mercado also complains that, on June 9, 2010, he was told by a correctional officer not to take a shower over five minutes because some of the residents are breaking out in rashes from the water. (Compl., ¶ 6). Mercado does not allege that he has suffered from a rash.

Mercado asks to be placed in a federally funded treatment facility. He also seeks monetary compensation for being placed

4

in a prison environment where he has suffered mental anguish, harassment, and discrimination.  (Compl., ¶ 7).

On September 30, 2010, Mercado filed an application for a temporary restraining order.  He asked the Court to issue an order enjoining defendants from any type of retaliation.  By Order filed on October 15, 2010, this Court denied plaintiff's *ex parte* restraining order because Mercado failed to demonstrate immediate and irreparable injury, loss, or damage.  (October 15, 2010 Order, Docket entry no. 8).

On November 10, 2010, counsel for defendant Merril Main filed a motion to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6).  First, Main contends that plaintiff's claims against Main in his "official capacity" are barred by the doctrine of sovereign immunity, and that the claims against Main in his individual capacity must be dismissed for failure to state a cognizable claim for relief under § 1983.  (See Docket entry no. 12-1).

On December 12, 2010, counsel for defendant Steven Johnson filed a motion to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6), and/or for summary judgment.  Johnson likewise argues that plaintiff's claims against Johnson in his "official capacity" are barred by the doctrine of sovereign immunity, and that the claims against Main in his individual capacity must be dismissed for failure to state a cognizable claim for relief

5

under § 1983.  Further, Johnson claims that he is entitled to qualified immunity.  (See Docket entry no. 16-1).

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

A district court is required to review a complaint in a civil action where the litigant is proceeding in forma pauperis. Specifically, the court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2)(B).  Accordingly, because Mercado is proceeding in forma pauperis in this matter, this action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

6

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  See also Erickson, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  Id.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

7

Fed.R.Civ.P. 8(a)(2).[1] Citing its recent opinion in <u>Bell
Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), for the
proposition that "[a] pleading that offers 'labels and
conclusions' or 'a formulaic recitation of the elements of a
cause of action will not do,'" <u>Iqbal</u>, 129 S.Ct. at 1949 (quoting
<u>Twombly</u>, 550 U.S. at 555), the Supreme Court identified two
working principles underlying the failure to state a claim
standard:

> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to
> legal conclusions.  Threadbare recitals of the elements of a
> cause of action, supported by mere conclusory statements, do
> not suffice ... .  Rule 8 ... does not unlock the doors of
> discovery for a plaintiff armed with nothing more than
> conclusions.  Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss.
> Determining whether a complaint states a plausible claim for
> relief will ... be a context-specific task that requires the
> reviewing court to draw on its judicial experience and
> common sense.  But where the well-pleaded facts do not
> permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not
> "show[n]"-"that the pleader is entitled to relief."  <u>Fed.
> Rule Civ. Proc.</u> 8(a)(2).

<u>Iqbal</u>, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin
> by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

---

[1] Rule 8(d)(1) provides that "[e]ach allegation must be
simple, concise, and direct.  No technical form is required."
<u>Fed.R.Civ.P.</u> 8(d).

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1948.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before Twombly.  Fowler, 578 F.3d at 210.  The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].

---

[2]  In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Id., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" Iqbal, [129 S.Ct. at 1949-50]. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

III.   SECTION 1983 ACTIONS

Mercado brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.   THE NEW JERSEY SEXUALLY VIOLENT PREDATOR ACT

The New Jersey SVPA, N.J.S.A. 30:4-27.24 et seq., provides for the custody, care and treatment of involuntarily committed persons who are deemed to be sexually violent predators ("SVP"). N.J.S.A. 30:4-27.26.  The New Jersey Department of Corrections ("DOC") operates the facilities designated for SVPs, N.J.S.A. 30:4-27.34(a); and the New Jersey Department of Human Services ("DHS") provides for their treatment.  N.J.S.A. 30:4-27.34(b). The SVPA was amended in 2003 to require that regulations be promulgated jointly by the DOC and the DHS, in consultation with

11

of the Attorney General, taking "into consideration the rights of the patients as set forth in section ten of P.L. 1965, c. 59 (C. 30:4-24.2) ... [to] specifically address the differing needs and specific characteristics of, and treatment protocols related to, sexually violent predators." N.J.S.A. 30:4-27.34(d).

In passing the SVPA, the New Jersey Legislature made specific findings regarding SVPs. N.J.S.A. 30:4-27.25. The Legislature noted that it was necessary to modify the previous civil commitment framework and additionally separate SVPs from other persons who have been civilly committed. Id. The SVPA defines a SVP as:

> ... a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.

N.J.S.A. 30:4-27.26(b).

Those persons committed under the SVPA shall receive annual review hearings. N.J.S.A. 30:4-27.35. A SVP may be released from involuntary civil commitment upon recommendation of the DHS or by the SVP's own petition for discharge. N.J.S.A. 30:4-27.36.

V.   ANALYSIS

A.   Transfer to Prison Facility Claim

Mercado's main argument appears to claim that his transfer to a prison facility, as a civilly committed person under the

12

SVPA, is unconstitutional because he is subject to the prison policies in place for the orderly operation and security of a prison facility.

In <u>Kansas v. Hendricks</u>, 521 U.S. 346 (1997), the Supreme Court examined the conditions of confinement provided by Kansas' Sexually Violent Predator Act.  The Act called for the confinement of sexually violent predators in a secure facility because they were dangerous to the community.  <u>Id</u>., 521 U.S. at 363-64.  Pertinent here, the Supreme Court was aware that the sexually violent predators in Kansas were to be held in a segregated unit within the prison system.  However, the Court noted that the conditions within the unit were essentially the same as conditions for other involuntarily committed persons in mental hospitals.  Moreover, confinement under the Act was not necessarily indefinite in duration, and the Act provided for treatment.  <u>Id</u>., 521 U.S. at 363, 364, 365-368.  Thus, the Supreme Court held that involuntary confinement under Kansas' SVPA was not unconstitutional so long as such civilly-confined persons are segregated from the general prison population and afforded the same status as others who have been civilly committed.  <u>Id</u>., 521 U.S. at 368-69.  <u>See also Seling v. Young</u>, 531 U.S. 250, 261062 (2001)(holding same with respect to the State of Washington's SVPA).

Here, the New Jersey SVPA is essentially the same as the Kansas and Washington SVP statutes that were examined and upheld

as constitutional by the Supreme Court in <u>Hendricks</u> and <u>Seling</u>, respectively.[3]   <u>See</u> <u>Bagarozy v. Goodwin</u>, Civil Action No. 08-468 (SRC), 2008 WL 4416455, *7-8 (D.N.J. Sept. 23, 2008); <u>In re Commitment of W.Z.</u>, 173 N.J. 109, 801 A.2d 205, 211 (2002). Therefore, this Court finds that Mercado's placement and confinement in a Special Treatment Unit for SVP residents that is a segregated unit in the East Jersey State Prison, does not, in and of itself, violate the U.S. Constitution's Due Process Clause or the Eighth Amendment's prohibition against cruel and unusual punishment.   Accordingly, Mercado's claim that his continued confinement in a segregated unit within a prison facility is unconstitutional must be dismissed for failure to state a cognizable claim of a constitutional deprivation.[4]

B.   <u>Conditions of Confinement Claim</u>

Although plaintiff's placement in a segregated unit within a prison facility is not, in and of itself, a constitutional

---

[3]   Recently, the Supreme Court held constitutional under the Necessary and Proper Clause, a federal statute that allowed a district court to order the civil commitment of a sexually dangerous federal prisoner beyond the date the prisoner would otherwise be released.   <u>United States v. Comstock</u>, No. 08-1224, __ U.S. __, 130 S.Ct. 1949 (May 17, 2010).   Although these civilly committed persons remained confined at a federal prison, namely, FCI Butner, the Court did not address their place of civil confinement as being unconstitutional.

[4]   This Court notes that, despite plaintiff's continual reference to the EJSP-STU as the EJSP administrative segregation unit, defendant Johnson confirms that the "facility is no longer used as an administrative segregation unit for any individual, but instead is used solely to house and provide treatment to civilly committed residents pursuant to the SVPA."   (Declaration of Steven Johnson, dated November 8, 2010, at ¶ 8, Docket entry no. 16-2).

violation, Mercado makes additional allegations concerning the conditions of confinement at the EJSP facility.  For instance, he complains that he is housed in a prison facility subject to restrictions.  See Youngberg v. Romeo, 457 U.S. 307, 321-22 (1982)("Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.").

Generally, the Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment, Bell v. Wolfish, 441 U.S. 520, 536 (1979),[5] within the bounds of professional discretion, Youngberg, 457 U.S. at 321-22.  Specifically, in Youngberg, the Supreme Court held that civilly committed persons do have constitutionally protected interests, but that these rights must be balanced against the reasons put forth by the State for restricting their liberties. Id. at 307.  The Constitution is not concerned with de minimis restrictions on patients' liberties.  Id. at 320.  Moreover, "due process requires that the conditions and duration of confinement [for civilly confined persons] bear some reasonable relation to the purpose for which persons are committed." Seling, 531 U.S. at 265.  While the nature of an SVP's confinement may factor in

_____

[5] In Bell v. Wolfish, the Supreme Court held that whether a condition of confinement of pretrial detainees violated their constitutional rights turns on whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose.  441 U.S. 520, 535-39, (1979).

this balance of what is reasonable, it is clearly established that the substantive due process protections of the Fourteenth Amendment apply to SVPs. See Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001)(applying the Fourteenth Amendment's "objective reasonableness" standard to excessive force claims brought by civilly committed SVPs).

Mercado's main allegation with respect to the conditions of his confinement relates to his contention that he is now housed in a prison facility and has been treated like a prisoner and subjected to prison rules.  For instance, Mercado complains that his movement is monitored, and that he was subjected to a pat search and finger scan when he traveled from one area of the facility to another.  Mercado also alleges that the ceiling leaked when it rained all day, causing puddles on the floor, that showers are cold, and that some residents allegedly suffered a rash from taking a shower for more than five minutes.

The Third Circuit has held that placement of a civilly committed SVP in segregated confinement does not violate due process unless the deprivation of liberty is in some way extreme. See Deavers v. Santiago, 243 Fed. Appx. 719, 721 (3d Cir. 2007)(applying Sandin v. Conner, 515 U.S. 472 (1995),[6] to

---

[6]  In Sandin, the Supreme Court held that there was no cognizable liberty interest in freedom from additional restraint in a prison setting.  See 515 U.S. at 486 ("We hold that [the prisoner's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest.").

segregated confinement of civilly committed SVPs). <u>See also</u>
<u>Thielman v. Leean</u>, 282 F.3d 478 (7th Cir. 2002)(likewise
extending <u>Sandin</u> to civil commitment settings).  Thus, Mercado's
general allegation that movement by the residents in the general
prison facility is monitored and restricted, without more, fails
to articulate a cognizable claim of constitutional magnitude, in
light of <u>Deavers</u>.  Mercado fails to allege any facts to show that
movements within the EJSP facility are unduly extreme and
unrelated to the purposes for which such restrictions are
imposed.

Additionally, for the following reasons, this Court finds
that Mercado's complaints about the ion scan and pat searches,
the leaking ceiling and the cold showers, are not extreme
conditions of plaintiff's confinement as a civilly committed
person, and thus, do not violate due process.

1. *Unlawful Search Claim*

Mercado alleges that residents are subjected to "pat down"
searches when leaving/returning to the STU at EJSP for yard
recreation, or when they return from a visit.  In particular,
Mercado alleges that he was pat searched and finger scanned on
one occasion after he traveled from his unit.  He also states
that he witnessed an attorney pat searched upon her visitation to
the EJSP-STU.  Mercado asserts that as a civilly committed
person, such searches are unconstitutional and violate his rights
under the Fourth Amendment.

17

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. CONST. amend. IV.  Reasonableness under the Fourth Amendment "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 618 (1988)(quoting United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985)).  "Thus, the permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." Id. at 619 (quotation marks and internal citation omitted).

In Hudson v. Palmer, 468 U.S. 517, 530 (1984), a prisoner argued that a cell search conducted to harass him was unreasonable because a prisoner has a reasonable expectation of privacy not to have his cell, locker, personal effects, person invaded for such a purpose. Id. at 529.  The Supreme Court rejected the claim because "prisoners have no legitimate expectation of privacy." Id. at 530.  The Court observed that:

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.... [S]ociety would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security.... [I]t is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement.

Id. at 527-28 (footnotes, citations and internal quotation marks omitted). The same conclusion was reached with respect to pretrial detainees other than convicted prisoners. See Bell v. Wolfish, 441 U.S. 520, 558-560 (1979)(finding that a body cavity searches of pretrial detainees do not violate the Fourth Amendment).[7]

Consequently, involuntarily committed patients and SVPs, like pretrial detainees, are entitled to some protection under the Fourth Amendment, but they do not have an expectation of privacy equal to an individual in society generally. See Serna v. Goodno, 567 F.3d 944, 948 (8th Cir. 2009)(noting that pretrial detainees are kept in custody because there is cause to believe they are dangerous; similarly, commitment under Minnesota law as a sexually dangerous person requires a finding of dangerousness), cert. denied, 130 S.Ct. 465 (2009); Allison v. Snyder, 332 F.3d 1076-79 (7th Cir. 2003)(SVPs may be subjected to conditions that advance goals such as preventing escape and assuring the safety

---

[7] In Bell v. Wolfish, the United States Supreme Court, in determining the constitutionality of post-visitation body cavity searches, held that a reasonableness test should be employed when examining the constitutionality of a search that encroaches upon the personal privacy of an inmate and the integrity of the inmate's body. In other words, courts must balance the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. 441 U.S. 520, 559 (1979); see also Turner v. Safley, 482 U.S. 78 (1987) (a prison regulation which infringes upon an inmate's constitutionally recognized right is valid only if it is reasonably related to a legitimate penological interest).

of others, even though they may not technically be "punished"), cert. denied, 540 U.S. 985 (2003); Aiken v. Nixon, 236 F. Supp.2d 211, 233 (N.D.N.Y. 2002), aff'd 80 Fed. Appx. 146 (2d Cir. 2003); see also, Jennings v. New York State Office of Mental Health, 786 F. Supp. 376, 382, 384 (S.D.N.Y. 1992), aff'd, 977 F.2d 731 (2d Cir. 1992).

Similarly, the United States Court of Appeals for the Ninth Circuit has held that, because SVPs have been civilly committed subsequent to criminal convictions and have been adjudged to pose a danger to the health and safety of others, they are subject to "[l]egitimate, non-punitive government interests" such as "maintaining jail security, and effective management of [the] detention facility." Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004). Thus, the reasonableness of a particular search or seizure is determined by reference to the detention context and is a fact-intensive inquiry. Id.

Here, with respect to his Fourth Amendment claim, Mercado's primary argument appears to be that any prison actions that did not specifically take into account his classification as a SVP is per se a constitutional violation. Applying the balancing test employed by Wolfish, this Court finds that general pat searches conducted on residents after movement from one part of the STU and other areas in the EJSP facility are plainly reasonable and do not violate plaintiff's Fourth Amendment rights. See Semler v. Ludeman, 2010 WL 145275, *19, D. Minn. Jan. 8, 2010)(finding

no Fourth Amendment violation where plaintiffs were required to submit to pat searches following gym use and kitchen work assignments that included removal of socks and shoes, opening their mouths, showing their zippers, showing behind their ears and running their fingers through their hair; search was "not highly intrusive" and was "not unlike the scope of searches of the general public at airport security checkpoints). See also Serna v. Goodno, 567 F.3d 944, 955-56 (upholding reasonableness of a facility-wide visual body cavity search after a cell phone case (cell phones considered contraband) was found, because, while invasive, the searches were conducted privately, safely, and professionally, and the facility was reacting to a recurring problem involving contraband cell phones), cert. denied, 130 S. Ct. 465 (Oct. 20, 2009).

Moreover, there are no allegations that the guards conducted any pat search in a menacing or degrading manner.  Mercado does not allege that there was physical force used or that the search was done in a menacing manner.  See Kitchens v. Mims, 2010 WL 1240980 (E.D.Cal. March 25, 2010).  In fact, the allegations show a minimally intrusive search.

Furthermore, there is no allegation or evidence to show that the pat search and ion scan was conducted solely for punitive purposes.  Mercado does not allege that he was specifically targeted, but rather, a pat-down/ion scan policy was applied to him as well as other residents, and even visitors from outside

21

the facility, such as a public advocate attorney.  Thus, because
Mercado alleges that this policy is applied to all visitors,
residents and inmates moving within the EJSP facility as a whole,
such policy demonstrates that it was not intended to harass or
punish anyone, but instead to maintain a safe and secure
facility.

Therefore, based on all of these factors, this Court will
dismiss Mercado's Fourth Amendment unlawful search claim,
pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a
cognizable claim under § 1983.

2.  *Unsanitary Conditions*

Mercado next alleges that the EJSP-STU has leaking ceilings
when it rains, cold showers, and that some residents allegedly
have suffered a rash from taking showers longer than five
minutes.  He admits that the administrators have told him they
are working on these problems.  Mercado does not allege that he
has suffered any injury from the leaking ceiling or that he has
experienced any rashes or other injury or harm from the cold
showers.  Thus, Mercado does not contend that these conditions
are intended as punishment, or that he has suffered adversely
from these alleged conditions.  Based on these general
allegations, even if true, the Court finds no atypical or
significant deprivation that would rise to the level of a
constitutional violation at this time.

Therefore, with respect to his conditions claims as alleged, this Court finds that Mercado has failed to state a cognizable claim in this regard at this time, and the alleged conditions of confinement claims will be dismissed without prejudice.  To the extent that Mercado can allege additional facts to show that unconstitutional conditions of confinement exist, he may seek leave to re-open this case and file an amended pleading.[8]

C.  Denial of Treatment Claim

Mercado also is asserting generally that his therapy or treatment sessions will be disrupted or denied because of the prison setting and control by NJDOC officials over movement schedules and conduct of the residents in the EJSP-STU.  (Compl., ¶ 4d).  Thus, Mercado appears to argue that he may be denied the right to adequate treatment and reasonable care applicable to civilly committed SVPs, in violation of the Fourteenth Amendment.

The Fourteenth Amendment to the United States Constitution, § 1, guarantees that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law."  This

---

[8]  Should plaintiff so choose to amend his Complaint to cure the deficiencies noted herein, pursuant to Federal Rule of Civil Procedure 15, Mercado should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.

23

due process guarantee has been interpreted to have both procedural and substantive components, the latter which protects fundamental rights that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." Palko v. Conn., 302 U.S. 319, 325 (1937). These fundamental rights include those guaranteed by the Bill of Rights, as well as certain liberty and privacy interests implicitly protected by the Due Process Clause, such as the right to marry. Washington v. Glucksberg, 521 U.S. 702, 720 (1997). Substantive due process also protects against government conduct that is so egregious that it "shocks the conscience," even where the conduct does not implicate any specific fundamental right. See United States v. Salerno, 481 U.S. 739, 746 (1987).

Laws disturbing fundamental rights receive strict scrutiny and will be upheld if they are "narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). However, regulations not implicating fundamental rights (in other words, those claims attacking particularly egregious or arbitrary governmental actions) are analyzed under the deferential standard referred to as the rational basis review, and will generally succeed only if the government action shocks the conscience. See Glucksberg, 521 U.S. at 728.

With respect to Mercado's claim, it appears that he is asserting that he has a fundamental right to adequate treatment as a civilly committed sex offender, and that as a result of the

24

prison setting he will not be afforded adequate treatment.  The
Supreme Court established that there exists a constitutionally
protected right of mentally retarded persons confined at a state
institution to minimally adequate treatment.  Specifically, the
Supreme Court held that there is a constitutional right of
mentally disabled persons confined at a state institution to
"minimally adequate habilitation", self-care treatment or
training to the extent necessary to protect their recognized
fundamental rights to safety and freedom from physical
restraints.  Youngberg, 457 U.S. at 316, 319 and 322.

        The Supreme Court further held that, where a fundamental
right is at issue, a district court must balance "the liberty of
the individual and the demands of an organized society" to
determine whether such right has been violated.  Youngberg, 457
U.S. at 320.  Although restrictions burdening a fundamental right
generally receive strict scrutiny, in Youngberg, the Supreme
Court found that this sort of rigorous analysis would unduly
burden the ability of states, specifically their professional
employees, to administer mental health institutions.  Id. at 322.
Consequently, the Court concluded that "the Constitution only
requires that the courts make certain that professional judgment
was in fact exercised," because "[i]t is not appropriate for the
courts to specify which of several professionally acceptable
choices should have been made."  Id. at 321 (internal quotation
and citation omitted).  Thus, a decision, "if made by a

professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." Id. at 323.

In Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002), the United States Court of Appeals for the Third Circuit held that New Jersey's unique former statutory scheme for sex offenders that predicated the term of sentence on a prisoner's response to treatment and created a right to treatment created a fundamental and cognizable liberty interest in treatment, for purposes of both procedural and substantive due process analyses. 288 F.3d at 545. Leamer was not a civilly committed sex offender like plaintiff here. Rather, Leamer was a convicted sex offender whose confinement and treatment were inextricably linked pursuant to statute. The sentencing court had classified Leamer as having a "mental aberration" and in need of "specialized treatment," which automatically subjected Leamer to the maximum incarceration permitted by law unless he is cured prior to that point. Leamer could not reduce his sentence through good behavior credits, parole policies or other credits. Instead, he could only shorten his incarceration through successful therapy, which was an "inherent and integral element" of the statutory scheme. Consequently, the Third Circuit found that deprivation of

treatment would be a grievous loss not emanating from the sentence.  <u>Leamer</u>, 288 F.3d at 544.

Apart from that recognized in <u>Youngberg</u> to prevent the violation of recognized fundamental rights to safety and freedom from physical restraints, this Court finds the Third Circuit's holding in <u>Leamer</u> to clearly extend to an involuntarily committed sex offender under New Jersey's SVPA.  Like Leamer, the length of Mercado's confinement under the SVPA is predicated on his response to treatment.  Indeed, the provisions of the SVPA explicitly recognize New Jersey's obligation to provide treatment to SVPs for their eventual release based on successful therapy.  <u>See</u> <u>N.J.S.A</u>. 30:4-27.32(a)("If the court finds by clear and convincing evidence that the person needs continued involuntary commitment as a sexually violent predator, it shall issue an order authorizing the involuntary commitment of the person to a facility designated for the custody, care and **treatment** of sexually violent predators")(emphasis added); <u>N.J.S.A</u>. 30:4-34(b)("The Division of Mental Health Services in the Department of Human Services shall provide or arrange for treatment for a person committed pursuant to this act.  Such treatment shall be appropriately tailored to address the specific needs of sexually violent predators."); <u>N.J.S.A</u>. 30:4-27.36(a)(At any time during the involuntary commitment of a person under this act, if the person's treatment team determines that the person's mental condition has so changed that the person is not likely to engage

27

in acts of sexual violence if released, the treatment team shall recommend that the Department of Human Services authorize the person to petition the court for discharge from involuntary commitment status"); see also Kansas v. Hendricks, 521 U.S. 346, 367 (1997)(concluding from similarly-worded provisions of Kansas SVP Act that "the State has a statutory obligation to provide 'care and treatment for [persons adjudged sexually dangerous] designed to effect recovery ...."')(alterations in original)(internal citations omitted).

Therefore, based on Youngberg and Leamer, this Court concludes that Mercado may have a fundamental liberty interest in treatment, but has not stated a cognizable claim at this time for purposes of both procedural and substantive due process analyses. See Bailey v. Gardebring, 940 F.2d 1150, 1154 (8th Cir. 1991), cert. denied, 503 U.S. 952 (1992)(where the Eighth Circuit noted that Youngberg did not establish a right for the civilly committed to treatment per se; the Supreme Court only "held that the Constitution required only such 'minimally adequate training ... as may be reasonable in light of [the] liberty interest[ ] in safety and freedom from unreasonable restraints.'")(quoting Youngberg, 457 U.S. at 322).   In Bailey, the Eighth Circuit concluded that plaintiff had no right to "psychiatric treatment to overcome a 'sexual offender condition'" because he "was neither in danger during his civil commitment nor was he subject to any restraints beyond the ordinary incidents of any

28

involuntary confinement." <u>Id</u>. at 1153, 1154.  Citing <u>Bailey</u>,
district courts in the Eighth Circuit have since concluded that
civilly committed sexual predators have no substantive due
process right to mental health treatment, adequate or otherwise.
See <u>Semler v. Ludeman</u>, 2010 WL 145275, at *26 (D. Minn. Jan. 8,
2010)("Because this Court has not recognized a constitutional
right to effective 'treatment' in the context of civilly
committed sex offenders, Plaintiffs [alleging substantive due
process violations through ineffective treatment] have failed to
allege a due process claim ....")(citing <u>Nicolaison v. Ludeman</u>,
2008 WL 508549, at *8 (D. Minn. Feb. 11, 2008)(finding, in
ultimately concluding that involuntarily committed sex offender's
right to treatment is not "clearly established" for purposes of
28 U.S.C. § 2254(d)(1), that <u>Youngberg</u> "only recognized a right
to 'minimally adequate' treatment that reduces the need for
restraints," and not a "comparable right to treatment that
facilitates release")).

Indeed, based on the allegations and admissions by plaintiff
in his Complaint, Mercado fails to show any procedural or
substantive due process violations at this time.  He does not
demonstrate a categorical denial of therapy and treatment
sessions due to the prison setting in which he receives his
treatment.  Rather, his complaints more aptly demonstrate his
personal dissatisfaction with being in a prison setting, and
having group movements monitored and directed by the NJDOC.  He

fails to allege a single incident where a therapy group session was denied. Thus, there simply is no evidence that Mercado has been denied therapy sufficient to give rise to a claim of constitutional magnitude.

In Leamer, the Third Circuit, relying on Sandin, found that Leamer would face "significant obstacles" in establishing a procedural due process claim based on his placement on RAP (restricted activities program) status because the mere fact of placement in administrative segregation is not in and of itself enough to implicate a liberty interest. Leamer, 288 F.3d at 546. Similarly, in the instant case, although Mercado and other disruptive and agitative residents may be placed in MAP status in response to their behavior or uncooperation, there is no indication from the allegations here that these residents have been or will be denied treatment.[9]

Indeed, there are no factual allegations of an absolute denial of treatment. Mercado merely alleges that prison staff regulate movement and conduct searches and other policy measures for the orderly running and security of the EJSP facility as a whole, which Mercado feels affects his access to the treatment sessions of his choice. He does not allege that he has been

---

[9]   In his motion for a temporary restraining order, Mercado suggests that he may be placed on MAP status in retaliation by defendants for bringing this action. The allegation was nothing more than a bare legal conclusion and was insufficient to support preliminary injunctive relief, as plaintiff failed to allege any facts to support his bald claim.

denied treatment altogether.  Further, Mercado recites legal conclusions in his complaint about being made to feel like a "prisoner" rather than a civilly committed person rather than allege any facts to support a claim that he has been denied treatment.  Indeed, he seems mostly fixated on the idea of being in a "prison setting" and does not allege any real disruption or interference with his treatment, other than controlled movements in the EJSP facility, which on its own, does not curtail group therapy.

This Court likewise finds no substantive due process violation at this time.  Substantive due process prevents the government from engaging in conduct that "shocks the conscience," or interferes with rights "implicit in the concept of ordered liberty." Glucksberg, 521 U.S. at 721.  Under this standard, Defendants' actions in denying Mercado his statutory right to treatment will be found unconstitutional under the Fourteenth Amendment if they were so arbitrary or egregious as to shock the conscience.  See Leamer, 288 F.3d at 546-47 (substantive due process claim alleging inadequate treatment for committed sex offender "must focus on the challenged abuse of power by officials in denying [the plaintiff] the treatment regimen that was statutorily mandated and was necessary in order for his condition to improve, and thus for him to advance toward release").

Here, as demonstrated above, defendants have not categorically declined to provide any mental health treatment to Mercado. Thus, this Court cannot readily conclude that Defendants' actions were conscience-shocking and in violation of Mercado's substantive due process rights. Indeed, plaintiff's allegations, as set forth above, are merely conclusory and factually unsubstantiated. Mercado has not shown any disruption of treatment. Instead, he simply objects to the manner and place in which treatment and sessions are provided.

Thus, the Court concludes that treatment has not been denied to Mercado, as alleged because there is no demonstrated interruption of adequate treatment that would rise to the level of a constitutional due process deprivation as alleged. Further, this Court concludes that the allegations asserted in Mercado's Complaint do not show such egregious conduct or disruption as to render mental treatment at EJSP conscience-shockingly deficient.

Accordingly, based on the facts as alleged in the Complaint, any purported claim by Mercado that alleges denial or inadequate treatment must be dismissed for failure to state a cognizable claim of a deprivation of a constitutional right.

V.  CONCLUSION

For the reasons set forth above, plaintiff's Complaint will be dismissed without prejudice, in its entirety as against all named defendants, for failure to state a claim at this time, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff may seek

leave to re-open this case to file an amended pleading only to the extent he can allege facts to cure the deficiencies noted herein with respect to a claim of inadequate treatment or unsanitary living conditions.  The motions to dismiss and/or for summary judgment, filed by defendants, Merril Main and Steven Johnson, (Docket entry nos. 12 and 16, respectively) will be denied as moot.  An appropriate order follows.

STANLEY R. CHESLER
United States District Judge